# **<u>Exhibit E</u>**

## AMENDMENT TO LOAN DOCUMENTS

**THIS AMENDMENT TO LOAN DOCUMENTS** (this "*Amendment*") dated as of **JUNE** _17_, **2024** (the "*Amendment Effective Date*"), is by and between (a) **GOOD FLOOR LOANS LLC**, a Texas limited liability company (together with its successors and assigns, "*Lender*"), (b) **OHA PAPI, LLC**, a Texas limited liability company d/b/a Simple Auto DFW ("*Debtor*"), and (c) **KATHRYN A. GRUNER**, an individual residing the state of Texas ("*Guarantor*", and together with Debtor, "*Obligor*").

### RECITALS

**WHEREAS,** Debtor, Guarantor and Lender entered into that certain **LOAN AND SECURITY AGREEMENT** dated as of **MAY 15, 2024** (as amended, renewed and restated from time to time, the "*Agreement*");

**WHEREAS,** under the Agreement, among other documents, Debtor executed and delivered to Lender that certain **PROMISSORY NOTE** dated as of **MAY 15, 2024**, in the original principal amount of **FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00)** (as amended, renewed and restated from time to time, the "*Note*");

**WHEREAS,** the parties desire to amend the Agreement and modify the Note pursuant to the terms and conditions set forth herein;

**NOW THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    **Definitions**. Capitalized terms used in this Amendment, to the extent not otherwise defined herein, shall have the same meanings as in the Agreement, as amended hereby.

2.    **Increase to the Amount of the Note**. The notational amount of the Note is hereby increased to **TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00)**. All references in the Note and the Agreement to the amount "**FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00)**" and "**$500,000.00**" are hereby deleted in their entirety and replaced with **TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00)**" and "**$2,500,000.00**" respectively.

3.    **Modification of the Note**. As of the Amendment Effective Date, Section 1 of the Note is hereby deleted in its entirety and replaced with the following:

"1.    **Rate**. Prior to the Maturity Date or an Event of Default, the Rate shall be the lesser of (a) the **MAXIMUM RATE**, or (b) the greater of (i) the **TERM SOFR** plus **9.50%** or (ii) **10.00%** (the interest rate floor). Notwithstanding the foregoing, at any time there is an Overadvance and for so long as such Overadvance remains unpaid, the Rate on the unpaid principal balance of the Note may be increased without advance notice to Debtor at Lender's discretion up to the lesser of (i) **18.00%,** or (ii) the **MAXIMUM RATE**. The term "Term SOFR" means a variable rate of interest per annum equal to the 1 Month CME Term SOFR Rate, as administered by the Term SOFR Administrator (or a successor administrator of the term secured overnight financing rate) and published on the applicable screen page (or such other commercially available source providing such rate or quotations as may be designated by Lender from time to time) on the Term SOFR Administrator's Website. "Term SOFR Administrator" means the CME Group Benchmark Administration (or a successor administrator of Term SOFR). "Term SOFR Administrator's Website" means the website of the Term SOFR Administrator, currently at https://www.cmegroup.com/market-data/cme-group-benchmark-administration/term-sofr.html, or any successor source for the secured overnight financing rate identified as such by the Term SOFR Administrator from time to time. If the Term SOFR is no longer published on the Term SOFR Administrator's Website, then the Term SOFR shall be determined by reference to another similar lending rate index, generally accepted on a national basis, as selected by Lender in its sole and absolute discretion. The SOFR Rate shall be adjusted from time to time in Lender's sole discretion for then-applicable reserve requirements, deposit insurance assessment rates, marginal emergency,

supplemental, special and other reserve percentages, and other regulatory costs. Notwithstanding any provision of this Note or any other agreement or commitment between Debtor and Lender, whether written or oral, express or implied, Lender shall never be entitled to charge, receive or collect, nor shall amounts received hereunder be credited so that Lender shall be paid, as interest a sum greater than interest at the Maximum Rate. It is the intention of the parties that this Note, and all instruments securing the payment of this Note or executed or delivered in connection therewith, shall comply with applicable law. If Lender ever contracts for, charges, receives or collects anything of value which is deemed to be interest under applicable law, and if the occurrence of any circumstance or contingency, whether acceleration of maturity of this Note, prepayment of this Note, delay in advancing proceeds of this Note or any other event, should cause such interest to exceed the Maximum Rate, any amount which exceeds interest at the Maximum Rate shall be applied to the reduction of the unpaid principal balance of this Note or any other Indebtedness, and if this Note and such other Indebtedness are paid in full, any remaining excess shall be paid to Debtor. In determining whether the interest exceeds interest at the Maximum Rate, the total amount of interest shall be spread, prorated and amortized throughout the entire term of this Note until its payment in full. The term "Maximum Rate" as used in this Note means the maximum nonusurious rate of interest per annum permitted by whichever of applicable United States federal law or Texas law permits the higher interest rate, including to the extent permitted by applicable law, any amendments thereof hereafter or any new law hereafter coming into effect to the extent a higher Maximum Rate is permitted thereby. If at any time the Rate shall exceed the Maximum Rate, the Rate shall be automatically limited to the Maximum Rate until the total amount of interest accrued hereunder equals the amount of interest which would have accrued if there had been no limitation to the Maximum Rate. To the extent, if any, that Chapter 303 of the Texas Finance Code, as amended, (the "Act") is relevant to Lender for purposes of determining the Maximum Rate, the parties elect to determine the Maximum Rate under the Act pursuant to the "weekly ceiling" from time to time in effect, as referred to and defined in §303.001-303.016 of the Act; subject, however, to any right Lender subsequently may have under applicable law to change the method of determining the Maximum Rate."

4.    **Amendment to Exhibit I to the Agreement**. The Definition of Curtailed Floor Plan Advance Limit on Exhibit I to the Agreement is hereby deleted in its entirety and replaced with the following:

"Curtailed Floor Plan Advance Limit" means that the Initial Floor Plan Advance Limit shall be reduced by **10.00%** following the **90th** day after the Motor Vehicle's Curtailment Start Date, and by an additional **10.00%** following the **120th** day after the Motor Vehicle Curtailment Start Date, and further, the amount advanced on any Motor Vehicle by Lender shall be repaid to Lender in full upon the earlier of: (i) the sale of the Motor Vehicle; or (ii) the **180th** day after the Motor Vehicle Curtailment Start Date, if the Motor Vehicle is not sold. The foregoing notwithstanding, with respect to Repossessed Motor Vehicles and Trade-In Motor Vehicles, the Initial Floor Plan Advance Limit will be reduced to **0.00%** following the **90th** day after the Motor Vehicle's Curtailment Start Date, and the amount advanced on any Repossessed Motor Vehicle or Trade-in Motor Vehicle by Lender shall be repaid to Lender in full upon the earlier of: (i) the sale of the Motor Vehicle; or (ii) the **91st** day after the Motor Vehicle Curtailment Start Date, if the Motor Vehicle is not sold."

5.    **No Novation**. Neither the execution, delivery and acceptance of this Amendment nor any of the terms, covenants, conditions or other provisions set forth herein are intended, nor shall they be deemed or construed, to effect a novation of any liens or Indebtedness under any Note.

6.    **Conditions Precedent**. The obligations of Lenders under this Amendment shall be subject to the condition precedent that Obligors shall have executed and delivered to Lenders this Amendment and such other documents and instruments incidental and appropriate to the transaction provided for herein as Lenders or its counsel may reasonably request.

7.    **Additional Reporting**. Debtor hereby agrees that Lenders may, from time to time in its reasonable discretion, require certain reporting requirements of any Obligor (in addition to those set forth in Exhibit II of the Agreement) in response to Lenders' interpretation of, or implementation of precautionary measures relative to: (a) the introduction or adoption of, or any change in or in the interpretation, promulgation, implementation or administration

of, (i) any Legal Requirements (as defined below) or any applicable law, or (ii) any governmental or quasi-governmental rule, regulation, policy, guideline, interpretation or directive (whether or not having the force of law); (b) compliance by Lenders with any guideline or request from any Governmental Authority (as defined below) (whether or not having the force of law), including any request, rule, guideline or directive (i) in connection with the Dodd-Frank Wall Street Reform and Consumer Protection Act, or (ii) promulgated by any United States financial regulatory authorities. "Legal Requirements" means any law, ordinance, order, rule or regulation of a Governmental Authority. "Governmental Authority" means the government of the United States of America, any other nation or any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

8. **Ratifications**. Except as expressly modified and superseded by this Amendment, the Loan Documents are ratified and confirmed and continue in full force and effect. The terms, conditions and provisions of the Loan Documents (as the same may have been amended, modified or restated from time to time) are incorporated herein by reference, the same as if stated verbatim herein. The Loan Documents, as modified by this Amendment, continue to be legal, valid, binding and enforceable in accordance with their respective terms. Without limiting the generality of the foregoing, each Obligor hereby ratifies and confirms that all liens heretofore granted to Lenders were intended to and do continue to secure the full payment and performance of the Indebtedness. Each Obligor agrees to perform such acts and duly authorize, execute, acknowledge, deliver, file and record such additional assignments, security agreements, modifications or agreements to any of the foregoing, and such other agreements, documents and instruments as Lenders may reasonably request in order to perfect and protect the liens and preserve and protect the rights of Lenders.

9. **Representations, Warranties and Confirmations**. Each Obligor hereby represents and warrants to Lenders that (a) this Amendment and the other Loan Documents that have been duly executed and delivered by any Obligor party thereto, are valid and binding upon such Obligor and are enforceable against such Obligor in accordance with their terms, except as limited by any applicable bankruptcy laws, (b) no action of, or filing with, any governmental authority is required to authorize, or is otherwise required in connection with, the execution, delivery and performance by any Obligor of this Amendment or any other Loan Document, and (c) the execution, delivery and performance by such Obligor of this Amendment and any other Loan Documents do not require the consent of any other person and do not and will not constitute a violation of any laws, agreements or understandings to which such Obligor is a party or by which such Obligor is bound.

10. **Reaffirmation of Guaranty Agreements**. To induce Lenders to execute this Amendment, Guarantor: (a) agrees and consents to the execution and delivery of this Amendment and the terms thereof; (b) ratifies and confirms that all guaranties and assurances granted, conveyed or otherwise provided to Lenders under the Loan Documents, including, but not limited to the **GUARANTY** are not released, diminished, impaired, reduced, or otherwise adversely affected by the Amendment; (c) confirms and agrees that the Guaranty Agreement continues to guarantee and assure the payment and performance of Indebtedness, including, without limitation, all Indebtedness of Debtor to Lenders, in accordance with their terms; (d) agrees to perform such acts and duly authorize, execute, acknowledge and deliver such additional guarantees, assurances and other documents, instruments and agreements as Lenders may reasonably deem necessary or appropriate in order to create, perfect, preserve and protect those guaranties and assurances; and (e) waives notice of acceptance of this consent and confirmation, which consent and confirmation binds Guarantor and Guarantor's successors and assigns and inures to Lenders and its successors and assigns. The terms, conditions and provisions of the Guaranty Agreement (as the same may have been amended, modified or restated from time to time) are incorporated herein by reference, as if stated verbatim herein.

11. **Construction of Amendment**. Each party hereto acknowledges that it has participated in the negotiation of this Amendment and no provision, condition, term or covenant of this Amendment shall be construed against or interpreted to the disadvantage of any party hereto by any court or other governmental or judicial authority by reason of such party having or being deemed to have structured, dictated or drafted such provisions. Each Obligor acknowledges and agrees that such Obligor has at all times had access to an attorney in negotiations of the terms of and in the preparation and execution of this Amendment and that such Obligor has had the opportunity to review and analyze this Amendment for a sufficient period of time prior to the execution and delivery hereof. Each Obligor

further acknowledges and agrees that no representations and warranties have been made by or on behalf of Lenders, or relied upon by such Obligor pertaining to the subject matter of this Amendment other than those that are set forth in this Amendment, and that all of the terms of this Amendment were negotiated at arms-length, and this Amendment was prepared and executed without fraud, duress, undue influence or coercion of any kind exerted by any of the parties upon the others, and that the execution and delivery of this Amendment is the free and voluntary act of each Obligor.

12.     **Regulation B—Notice of Joint Intent**.  If Obligor is more than one Person, Federal Regulation B (Equal Credit Opportunity Act) requires Lenders to obtain evidence of each Obligor's intention to apply for joint credit. Each Obligor's signature below shall evidence such intent. Each Obligor's intent shall apply to future related extensions of joint credit and joint guaranty.

13.     **Multiple Counterparts**.  This Amendment may be executed in a number of identical separate counterparts, each of which for all purposes is to be deemed an original, but all of which shall constitute, collectively, one agreement. Signature pages to this Amendment may be detached from multiple separate counterparts and attached to the same document and a telecopy or other facsimile of any such executed signature page shall be valid as an original.

14.     **Reference to Loan Documents**.  Each of the Loan Documents, including the Agreement and Note and any and all other agreements, documents, or instruments now or hereafter executed and delivered pursuant to the terms hereof containing a reference to the Agreement shall mean and refer to the Agreement and Note as amended hereby.

15.     **Severability**.  Any provision of this Amendment held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Amendment and the effect thereof shall be confined to the provision so held to be invalid or unenforceable.

16.     **Headings**.  The headings, captions, and arrangements used in this Amendment are for convenience only and shall not affect the interpretation of this Amendment.

17.     **No Pending Bankruptcies and Waiver**.  No action or proceeding, including, without limitation, a voluntary or involuntary petition for bankruptcy under any chapter of the Bankruptcy Code, has been instituted by or against any Obligor.  Upon any filing of bankruptcy, Lenders shall be entitled to immediate termination of the automatic stay provisions of 11 U.S.C. §362, granting Lenders complete relief in allowing Lenders to exercise all of its legal rights and remedies, including without limitation, the right to foreclose the lien created in the Loan Documents, judicially or nonjudicially, or any other right or remedy afforded under the Loan Documents, at law, in equity or otherwise, and agree not to directly or indirectly oppose or otherwise defend against Lenders' efforts to gain relief from the automatic stay or to foreclose the collateral securing the Indebtedness. Lenders shall be entitled as aforesaid to the lifting of the automatic stay without the necessity of an evidentiary hearing, without the necessity or requirement of Lenders to establish or prove the value of the collateral securing the Indebtedness, or the necessity to prove the lack of adequate protection of Lenders' interest in the collateral securing the Indebtedness. In no event will any Obligor contest the validity, perfection or priority of Lenders' liens in the Collateral securing the indebtedness and obligations set forth in the Loan Documents.

18.     **Release**.  As a material inducement to Lenders to enter into this Amendment, each Obligor hereby fully, finally, and absolutely and forever releases and discharges Lenders and its present and former directors, shareholders, officers, employees, agents, representatives, successors and assigns, and their separate and respective heirs, personal representatives, successors and assigns, from any and all actions, causes of action, claims, debts, damages, demands, liabilities, obligations, and suits, of whatever kind or nature, in law or equity of such Obligor, whether now known or unknown to such Obligor, and whether contingent or matured (a) in connection with any and all obligations owed or owing to the Lenders under or in respect of the Agreement, the Loan Documents, or the actions or omissions of Lenders in respect of the Agreement and the Loan Documents; and (b) arising from events occurring prior to the Amendment Effective Date.

## NOTICE OF FINAL AGREEMENT

THE AGREEMENT AND THE OTHER LOAN DOCUMENTS, AS AMENDED BY THIS AMENDMENT REPRESENT THE FINAL AGREEMENT BETWEEN AND AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN AND AMONG THE PARTIES.

*SIGNATURE PAGE TO FOLLOW*

IN WITNESS WHEREOF, the parties have caused this Amendment to be effective and duly executed as of the Amendment Effective Date.

*LENDER:*

GOOD FLOOR LOANS LLC,
a Texas limited liability company


By:   _____
Name:   Mark A. Jensen
Title:   Manager

*ADDRESS:*

3460 Lotus Drive, Suite 100
Plano, Texas 75075



*DEBTOR:*

OHA PAPI, LLC,
a Texas limited liability company

By: *Kathryn A Gruner*
Name:   Kathryn A. Gruner
Title:   Manager

*ADDRESS:*

11700 Garland Road
Dallas, Texas 75218



*GUARANTOR:*

*Kathryn A Gruner*
KATHRYN A. GRUNER

*ADDRESS:*

5905 Steuben Court
Dallas, Texas 75248



AMENDMENT TO LOAN DOCUMENTS – SIGNATURE PAGE
GOOD FLOOR LOANS LLC – OHA PAPI, LLC